1   **WO**

2

3

4

5

6

7               **IN THE UNITED STATES DISTRICT COURT**

8                 **FOR THE DISTRICT OF ARIZONA**

9

Beau John Greene,                    )      No. CV 03-605-TUC-FRZ
10                                            )
            Petitioner,              )      DEATH PENALTY CASE
11                                            )
vs.                                  )
12                                            )
                                     )      **ORDER RE: MOTIONS FOR RECORD**
13  Dora Schriro, et al.,            )      **EXPANSION, DISCOVERY, AND AN**
                                     )      **EVIDENTIARY HEARING**
14          Respondents.             )
                                     )
15  _____  )

16

17          Petitioner Beau John Greene is a state prisoner under sentence of death. He has filed

18  a Petition for Writ of Habeas Corpus alleging that he is imprisoned and sentenced in violation

    of the United States Constitution.  Pending before the Court is Petitioner's Motion for Record
19
    Expansion, Discovery, and an Evidentiary Hearing.  (Dkt. 67.)[1]  Petitioner seeks evidentiary
20
    development as to Claims 1, 2, 4-7, 10, and 12.  Respondents filed a response, and Petitioner
21
    filed a reply.  (Dkts. 76, 78.)
22
            Pursuant to the Court's general procedures governing resolution of capital habeas
23
    proceedings, the parties have completed briefing of both the procedural status and merits of
24
    Petitioner's claims.  Therefore, the Court will first determine whether Petitioner's habeas
25
    claims are appropriate for review on the merits or subject to a procedural bar.
26

27  _____

28          [1]  "Dkt." refers to the documents in this Court's case file.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

2    In 1996, a jury convicted Petitioner of the kidnapping, robbery and first-degree

3 murder of Roy Johnson, a music professor at the University of Arizona in Tucson. Pima

4 County Superior Court Judge Bernardo P. Velasco sentenced Petitioner to death for the

5 murders and to a term of imprisonment for the other counts. On direct appeal, the Arizona

6 Supreme Court reversed the kidnapping conviction but otherwise affirmed. State v. Greene,

7 192 Ariz. 431, 967 P.2d 106 (1998). A petition for certiorari to the United States Supreme

8 Court was denied in May 1999. Greene v. Arizona, 526 U.S. 1120 (1999).

9    Petitioner filed a petition for post-conviction relief ("PCR") pursuant to Rule 32 of

10 the Arizona Rules of Criminal Procedure on August 18, 2000, and an amended petition in

11 December 2001. Following an evidentiary hearing, the PCR court denied relief in January

12 2003.[2] On December 4, 2003, the Arizona Supreme Court summarily denied a petition for

13 review. Thereafter, Petitioner initiated the instant habeas proceedings.

14

**PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

15    Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

16 and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Lindh v. Murphy,

17 521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003). The AEDPA

18 requires that a writ of habeas corpus not be granted unless it appears that the petitioner has

19 exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); see also Coleman v.

20 Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). To properly

21 exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest

22 court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838, 848

23 (1999).

24

_____

25    [2]    During PCR proceedings in this matter, Judge Velasco left the Pima County

26 bench to assume his current position as a United States Magistrate Judge for the District of
Arizona. Pima County Superior Court Judge Jane L. Eikleberry presided over the evidentiary

27 hearing ruled on the PCR petition.

28

1    A claim is "fairly presented" if the petitioner has described the operative facts and the

2 federal legal theory on which his claim is based so that the state courts have a fair

3 opportunity to apply controlling legal principles to the facts bearing upon his constitutional

4 claim.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78

5 (1971).[3]  Commenting on the importance of fair presentation, the United States Supreme

6 Court has stated:

7    If state courts are to be given the opportunity to correct alleged violations of
     prisoners' federal rights, they must surely be alerted to the fact that the
8    prisoners are asserting claims under the United States Constitution. If a habeas
     petitioner wishes to claim that an evidentiary ruling at a state court trial denied
9    him the due process of law guaranteed by the Fourteenth Amendment, he must
     say so, not only in federal court, but in state court.
10
11 Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Following Duncan, the Ninth

12 Circuit Court of Appeals has held that a state prisoner has not "fairly presented" (and thus

13 exhausted) federal claims in state court unless he specifically indicated to that court that the

14 claims were based on federal law.  See, e.g., Lyons v. Crawford, 232 F.3d 666, 669-70

15 (2000), as amended by 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of

16 evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the

17 specificity and explicitness required to present federal claim); Shumway v. Payne, 223 F.3d

18 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal

19 claim); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity

20 between a claim of state and federal error is insufficient to establish exhaustion.").  A

21 petitioner must make the federal basis of a claim explicit by citing specific provisions of

22 federal statutory or case law, even if the federal basis of a claim is "self-evident," Gatlin v.

23 Madding, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze

24 the same federal constitutional claim, Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir.

25 

26    [3]    Resolving whether a petitioner has fairly presented his claim to the state court
27 is an intrinsically federal issue to be determined by the federal court.  Wyldes v. Hundley,
   69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

28                                    - 3 -

1    2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-

2    conviction court, but to the state's highest court.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).

3    If a petitioner's habeas claim includes new factual allegations not presented to the state court,

4    the claim may be considered unexhausted if the new facts "fundamentally alter" the legal

5    claim presented and considered in state court.  <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986).

6          A habeas petitioner's claims may be precluded from federal review in either of two

7    ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

8    in state court but found by that court to be defaulted on state procedural grounds.  <u>Coleman</u>,

9    501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed

10   to present the claim in any forum and "the court to which the petitioner would be required

11   to present his claims in order to meet the exhaustion requirement would now find the claims

12   procedurally barred."  <u>Id.</u> at 735 n.1.  This is often referred to as "technical" exhaustion

13   because although the claim was not actually exhausted in state court, the petitioner no longer

14   has an available state remedy.  <u>See id.</u> at 732 ("A habeas petitioner who has defaulted his

15   federal claims in state court meets the technical requirements for exhaustion; there are no

16   remedies any longer 'available' to him."); <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996).

17         Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may

18   seek relief in post-conviction proceedings and raise federal constitutional challenges to their

19   convictions or sentences in state court.  Rule 32.2 provides, in part:

20              a.  Preclusion.  A defendant shall be precluded from relief under this
             rule based upon any ground:
21           . . . .

22              (2)  Finally adjudicated on the merits on appeal or in any previous
             collateral proceeding;

23

24              *(3)  That has been waived at trial, on appeal, or in any previous
             collateral proceeding.*

25              b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based
             on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections]
26           is to be raised in a successive or untimely post-conviction relief proceeding,
             the notice of post-conviction relief must set forth the substance of the specific
27           exception and the reasons for not raising the claim in the previous petition or

28                                          - 4 -

in a timely manner.  If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief.  Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(b), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32.  If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501 U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review.  Harris v. Reed, 489 U.S. 255, 262 (1989).  A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling.  See Stewart v. Smith, 536 U.S. 856, 860 (2002) (per curiam).  A state bar is not adequate unless it was firmly established and regularly followed at the time of application by the state court.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims.  Reed v. Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on

1   the merits in federal court.  <u>Coleman</u>, 501 U.S. at 735 n.1.

2   Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some
3   objective factor external to the defense impeded counsel's efforts to comply with the State's
4   procedural rule."  <u>Id.</u> at 753.  Objective factors which constitute cause include interference
5   by officials which makes compliance with the state's procedural rule impracticable, a
6   showing that the factual or legal basis for a claim was not reasonably available to counsel,
7   and constitutionally ineffective assistance of counsel.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488
8   (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error or violation.
9   <u>Magby v. Wawrzaszek</u>, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice resulting
10  from a procedural default, a habeas petitioner bears the burden of showing not merely that
11  the errors at his trial raised a possibility of prejudice, but that they worked to his actual and
12  substantial disadvantage, infecting his entire trial with errors of constitutional dimension.
13  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  If a petitioner cannot meet the cause and
14  prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the
15  failure to hear the claims would constitute a "fundamental miscarriage of justice."  <u>Sawyer</u>
16  <u>v. Whitley</u>, 505 U.S. 333, 339 (1992).

17  **<u>PROCEDURAL STATUS OF CLAIMS</u>**

18  Respondents concede that Claims 4-A (in part), 4-D, 6-B (in part) and 7-C are
19  properly exhausted.  (Dkt. 84 at 26, 29, 42.)  They further concede that Claim 11, alleging
20  that Petitioner will be incompetent for execution, should be dismissed because the claim is
21  not ripe.  (<u>Id.</u> at 48.)  With the exception of Claim 4-B, the procedural status of which is not
22  addressed, Respondents contend that the remainder of Petitioner's claims are procedurally
23  defaulted.

24  **<u>Claim 1</u>**

25  Petitioner alleges that his federal constitutional rights were violated by the
26  prosecution's failure to disclose "unflattering statements" made by an anonymous caller
27  about the victim's wife, who was a witness at trial, and the detective's notes from his

28

1   conversation with the caller. (Dkt. 82 at 54-61.) He further alleges that the prosecution

2   failed to disclose that the victim's wife had engaged in an extra-marital affair. (Id.)

3   Respondents assert that this claim is procedurally defaulted because Petitioner failed to

4   present any federal constitutional challenge in state court relating to either the anonymous

5   phone call or the wife's affair. (Dkt. 84 at 13.) The Court agrees.

6           In his Amended PCR petition, Petitioner argued that newly-discovered impeachment

7   evidence concerning the victim's wife's affair cast doubt on the propriety and veracity of her

8   testimony and, therefore, Petitioner was entitled to a new trial. (PCR-ROA doc. 23 at 37-

9   42.)[4] He further asserted that had this new evidence been considered, the trial judge would

10  not have imposed the death sentence. (Id. at 41.) Nowhere in the petition did Petitioner

11  assert that his federal constitutional rights had been violated by the prosecution's failure to

12  disclose material evidence. In addition, Petitioner did not present any issues either on appeal

13  or in his PCR petition concerning the anonymous phone call. Accordingly, the Court finds

14  that Claim 1 was not fairly presented to the Arizona courts.

15          Petitioner argues that if the Court determines Claim 1 was not properly exhausted, it

16  should stay these proceedings and allow him to return to state court. See Rhines v. Weber,

17  544 U.S. 269 (2005). It is the role of the district court to determine if a petitioner presently

18  has a remedy available in state court. See Ortiz, 149 F.3d at 931 (citing Harris, 489 U.S. at

19  269-70 (O'Connor, J., concurring)). In making that decision, the court must "assess the

20  likelihood that a state court will accord the habeas petitioner a hearing on the merits of his

21  claim." Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) (citing Harris, 489 U.S. at

22  268 (O'Connor, J., concurring)). The question is whether "there is some reasonable

23

24          [4]     "PCR-ROA doc." refers to documents in the two-volume record on appeal
    prepared for Petitioner's petition for review to the Arizona Supreme from the denial of PCR
25  relief. (Case No. CR-03-0084-PC). "PR doc." refers to documents filed in the Arizona
    Supreme Court during Petitioner's petition for review. "R.T." refers to the reporter's
26  transcript. Certified copies of these records as well as the original trial transcripts and
    appellate briefs were provided to this Court by the Arizona Supreme Court. (Dkt. 60.)

28

1     probability that (state) relief . . . will actually be available." <u>Matias v. Oshiro</u>, 683 F.2d 318,

2     320 (9th Cir. 1982) (citing <u>Powell v. Wyrick</u>, 657 F.2d 222, 224 (8th Cir. 1981)).

3          Other than a general assertion that Respondents have failed to establish a valid

4     procedural bar, Petitioner does not argue in any specific manner how relief is still available

5     to him on this claim in state court.  (Dkt. 53 at 22-23.)  Rules 32.2(b) and 32.4(a) of the

6     Arizona Rules of Criminal Procedure provide that a petitioner may only file a successive,

7     untimely PCR petition based on claims that fall within the exceptions to preclusion set forth

8     in Rule 32.1(d)-(h).[5]  Such a petition must set forth "meritorious reasons" for not raising the

9     claim in an available earlier proceeding.  Here, Petitioner's trial and appellate counsel were

10    aware of the anonymous phone call but did not assert any claims based on this knowledge.

11    In addition, PCR counsel presented the facts relating to the wife's affair, but neglected to

12    argue a federal constitutional claim based on these facts.  The Court concludes that Claim 1

13    does not fall within any of Arizona's exceptions to preclusion and that Petitioner would be

14    unable to show meritorious reasons under Rule 32.2(b) for not arguing the federal

15    constitutional basis of Claim 1 in his first PCR petition.  Thus, the Court finds there is no

16    "reasonable probability that (state) relief . . . will actually be available." <u>Matias</u>, 683 F.2d

17    at 320.

18         Because the Court finds there are no remedies presently available to Petitioner in state

19    court, Claim 1 is technically exhausted but procedurally defaulted.  <u>Coleman</u>, 501 U.S. at

20    732, 735 n.1.  This claim will be barred from review on the merits absent a showing of cause

21    and prejudice or fundamental miscarriage of justice.

22

23            [5]    Arizona's preclusion rule is independent of federal law, <u>see</u> <u>Stewart v. Smith</u>,

24    536 U.S. 856, 860 (2002) (per curiam), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its preclusion rules such that they are an adequate

25    bar to federal review of a claim.  <u>See</u> <u>Ortiz v. Stewart</u>, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate); <u>Poland v. Stewart</u>, 117 F.3d 1094,

26    1106 (9th Cir. 1997) (same); <u>Martinez-Villareal v. Lewis</u>, 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); <u>Carriger v. Lewis</u>, 971 F.2d 329,

27    333 (9th Cir. 1992) (en banc) (same).

28

1    As cause for the default, Petitioner asserts the merits of Claim 1 – that the prosecution

2    violated its duty, as set forth in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), to disclose material

3    evidence favorable to the defense.  To succeed on a <u>Brady</u> claim, a petitioner must establish

4    that (1) evidence favorable to the accused was (2) suppressed by the prosecution, either

5    willfully or inadvertently, (3) resulting in prejudice to the defense.  <u>Banks v. Dretke</u>, 540

6    U.S. 668, 691 (2004) (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)).  Establishing

7    the second factor also establishes cause for any failure to develop a <u>Brady</u> claim in state

8    court.  <u>Id.</u>

9    Petitioner cannot establish cause because the prosecution informed both defense

10   counsel and the trial court of the details of the anonymous phone call.  (<u>See</u> R.T. 3/13/96 at

11   75-77, 79.)  Petitioner has not alleged that the detective's notes contained material

12   information not relayed by the prosecution during trial.  In addition, the victim's wife's extra-

13   marital affair was discovered during the PCR proceedings, and PCR counsel urged that

14   Petitioner be re-tried as a result of the newly-discovered evidence.  Nothing prevented

15   Petitioner from also asserting a <u>Brady</u> violation based on this new evidence.

16   The Court concludes that Petitioner has failed to establish cause for the default of

17   Claim 1; therefore, the Court need not address prejudice.  <u>Thomas v. Lewis</u>, 945 F.2d 1119,

18   1123 n.10 (9th Cir. 1991).  In addition, the Court finds no disputed issues of fact warranting

19   an evidentiary hearing on these issues.  <u>See</u> <u>Campbell v. Blodgett</u>, 997 F.2d 512, 524 (9th

20   Cir. 1992) ("An evidentiary hearing is not necessary to allow a petitioner to show cause and

21   prejudice if the court determines as a matter of law that he cannot satisfy the standard.").

22   Petitioner's request for a hearing on cause and prejudice is therefore denied.

23   Petitioner also asserts that a fundamental miscarriage of justice will occur if the Court

24   does not consider Claim 1 on the merits because he is actually innocent of the crime and the

25   death penalty.  Petitioner advances no "new reliable evidence" that was not presented at trial

26   to support his claim of actual innocence of the crime.  <u>Schlup v. Delo</u>, 513 U.S. 298, 324

27   (1995).  Rather, he argues only reasonable doubt in the State's case against him, which does

28

1   not satisfy this standard.  The Court also summarily rejects Petitioner's claim that, in light

2   of available mitigation evidence, he is actually innocent of the death penalty.  The existence

3   or weight of mitigation evidence is irrelevant to the question of eligibility for the death

4   sentence.  See Sawyer, 505 U.S. at 347 (focus is on eligibility, not additional mitigation).

5   The Court finds that Petitioner has not made the requisite showing of actual innocence and

6   that the failure to consider Claim 1 on the merits will not result in a fundamental miscarriage

7   of justice.

8        Because Petitioner has failed to establish cause and prejudice or a fundamental

9   miscarriage of justice to overcome the default, Claim 1 is procedurally barred and will be

10   dismissed with prejudice.

11   **Claim 2**

12        Petitioner asserts that his rights under the Fourteenth Amendment were violated

13   because insufficient evidence supported his conviction for robbery.  (Dkt. 82 at 61-66.)

14   Respondents argue that Claim 2 was presented on direct appeal solely as a state law claim

15   under Rule 20 of the Arizona Rules of Criminal Procedure and that no state remedies remain

16   to exhaust this claim now.  (Dkt. 84 at 16.)  The Court agrees.

17        In his appellate brief, Petitioner argued that the trial court had committed reversible

18   error by denying his Rule 20 motion for directed verdict as to the robbery count.  (Opening

19   Br. at 25.)  Nowhere in this argument did Petitioner assert a violation of federal constitutional

20   rights.  Nonetheless, Petitioner argues that Claim 2 was properly exhausted because in his

21   appellate brief Petitioner cited State v. Edwards, 136 Ariz. 177, 665 P.2d 59 (1983), and

22   Edwards includes a citation to the U.S. Supreme Court's decision Jackson v. Virginia, 443

23   U.S. 307, 314 (1979), which holds that insufficient evidence to sustain a conviction

24   constitutes a denial of due process under the Fourteenth Amendment.

25        A petitioner fairly presents a federal claim only if he alerts the state court that his

26   claim rests on the federal Constitution.  Fields v. Waddington, 401 F.3d 1018, 1020-21 (9th

27   Cir.), cert. denied, 126 S. Ct. 738 (2005).  Citation to state court law may serve this purpose

28

1    if the state case "engages in a federal constitutional analysis." Id. at 1021; see Peterson v.

2    Lampert, 319 F.3d at 1158-59.  If the state case discusses both state and federal issues

3    relevant to the petitioner's claim, the citation to that case "must be accompanied by some

4    clear indication that the case involves federal issues." Casey v. Moore, 386 F.3d 896, 912

5    n.13 (9th Cir. 2004), cert. denied, 125 S. Ct. 2975 (2005).

6          Here, a fair reading of Petitioner's appellate brief reveals that he cited Edwards only

7    to support a state-law claim – that the trial court erred in denying his Rule 20 motion.  See

8    Peterson, 319 F.3d at 1159 ("All petitions must be read in context and understood based on

9    the particular words used."); see also Casey, 386 F.3d at 912 n.13 (state court not fairly

10   alerted to federal law challenge where appellant failed to include a textual statement or a

11   paranthetical in his brief to alert appellate court to federal legal proposition).  Moreover, the

12   court in Edwards did not engage in a federal constitutional analysis.  Rather, it referenced the

13   Supreme Court's Jackson case only in a comparison citation.  As in Casey, this Court

14   concludes that Petitioner's citation to a state case that has "no signal in the text of the brief

15   that the petitioner raises federal claims or relies on state law cases that resolve federal

16   issues," 386 F.3d at 912 n.13, was insufficient to fairly alert the Arizona Supreme Court to

17   Petitioner's federal due process claim.

18         The Court finds that Petitioner failed to fairly present Claim 2 in state court.  Because

19   Petitioner has no available state court remedies to exhaust this claim, see Ariz. R. Crim. P.

20   32.2 and 32.4(a), Claim 2 is technically exhausted but procedurally defaulted.  See Coleman,

21   501 U.S. at 732, 735 n.1.

22         As cause for the default, Petitioner asserts that his appellate counsel's representation

23   was constitutionally deficient.  (Dkt. 53 at 33.)  Before an allegation of ineffectiveness may

24   be used to establish cause for a procedural default, it must have been presented to the state

25   court as an independent claim.  Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000)

26   ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of

27   another claim can itself be procedurally defaulted"); Murray, 477 U.S. at 489-90 ("[T]he

28                                          - 11 -

1    exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented

2    to the state courts as an independent claim before it may be used to establish cause for a

3    procedural default."); <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (exhaustion

4    requires petitioner to first raise ineffective appellate counsel claim separately in state court

5    before alleging it as cause for default).

6          Petitioner asserts that Respondents have conceded he exhausted a claim of appellate

7    ineffectiveness. (Dkt. 53 at 33.) It is clear from the pleadings, however, that Petitioner has

8    mischaracterized this concession.   Respondents conceded only that the allegation of

9    ineffectiveness raised in Claim 4 of the instant habeas petition was exhausted. (Dkt. 84 at

10   29.) Claim 4 does not assert that appellate counsel was ineffective for failing to raise Claim

11   2 on appeal; rather, it contends that appellate counsel was ineffective for failing to argue on

12   appeal that Petitioner's death sentence constitutes cruel and unusual punishment. (Dkt. 82

13   at 97.)   Because Petitioner did not present in state court an independent appellate

14   ineffectiveness claim based on the failure to present Claim 2 on direct appeal, such alleged

15   ineffectiveness cannot constitute cause.

16         Petitioner summarily asserts that a fundamental miscarriage of justice will occur if the

17   Court does not review this claim on the merits because he is innocent of murder and of the

18   death penalty.  However, Petitioner advances no "new reliable evidence" that was not

19   presented at trial to support the claim that he is actually innocent of the crime. <u>See</u> <u>Schlup</u>,

20   513 U.S. at 324.  Nor has he shown by clear and convincing evidence that, but for

21   constitutional error, no reasonable factfinder would have found the existence of any

22   aggravating circumstance or other condition of eligibility for the death sentence under

23   Arizona law.  <u>Sawyer</u>, 505 U.S. at 345.  The Court finds that Petitioner has not made the

24   requisite showing of actual innocence and that the failure to consider Claim 2 on the merits

25   will not result in a fundamental miscarriage of justice.

26         Because Petitioner has failed to establish cause and prejudice or a fundamental

27   miscarriage of justice to overcome the default, Claim 2 is procedurally barred and will be

28                                          - 12 -

1    dismissed with prejudice.

2

3         **Claim 3**

4         Petitioner contends that because there was insufficient evidence to support his robbery

5    conviction, the felony murder conviction cannot stand. (Dkt. 82 at 67.)  On appeal, Petitioner

6    included a one-paragraph argument asserting that his felony murder conviction cannot stand

7    because there was insufficient evidence to support the underlying felonies – robbery and

8    kidnapping.  (Opening Br. at 30.)  Petitioner acknowledges that he did not assert a federal-

9    law basis for this claim, but argues that the Arizona Supreme Court nonetheless actually

10   considered the relevant constitutional issue in its decision.  The Court disagrees.

11        In its decision, the Arizona Supreme Court reversed Petitioner's kidnapping

12   conviction, finding insufficient evidence to support a determination beyond a reasonable

13   doubt that the victim had been restrained.  Greene, 192 Ariz. at 437, 967 P.2d at 112.  The

14   court upheld the robbery verdict, finding sufficient evidence to support a determination that

15   Petitioner's use of force against the victim was accompanied by an intent to take the victim's

16   property.   In rejecting Petitioner's claim that the felony-murder conviction should be

17   reversed, the Court noted that the robbery conviction remained a sufficient predicate crime

18   to affirm Petitioner's conviction of felony murder.  It further noted that the dictates of

19   Enmund v. Arizona, 458 U.S. 782 (1982), and Tison v. Arizona, 481 U.S. 137 (1987), were

20   satisfied because Petitioner admitted that he killed the victim.  192 Ariz. at 437, 967 P.2d at

21   112.  The court's reference to Enmund and Tison did not, as Petitioner asserts, constitute

22   actual consideration of the federal constitutional argument asserted in Claim 3.  Enmund and

23   Tison rest on Eighth Amendment principles concerning imposition of the death penalty based

24   on individual culpability; Petitioner's argument here is that his right to due process under the

25   Fourteenth Amendment was violated by the felony-murder conviction because there was

26   insufficient evidence to sustain the convictions of the underlying felonies.

27        The Court concludes that Petitioner failed to fairly present Claim 3 in state court.

28

1   Because Petitioner has no available state court remedies to exhaust this claim, see Ariz. R.

2   Crim. P. 32.2 and 32.4(a), Claim 3 is technically exhausted but procedurally defaulted.  See

3   Coleman, 501 U.S. at 732, 735 n.1.  For the reasons already discussed with respect to Claims

4   1 and 2, the Court rejects Petitioner's assertion that appellate ineffectiveness constitutes

5   cause for the default and that a fundamental miscarriage of justice will occur if the claim is

6   not heard on the merits.  Accordingly, Claim 3 is procedurally barred and will be dismissed

7   with prejudice.

8       **Claim 4-A**

9       Petitioner asserts that he received ineffective assistance of counsel ("IAC") in

10  violation of his rights under the federal Constitution when trial counsel erroneously advised

11  Petitioner to testify untruthfully regarding his use of a reinforced glove during the crime,

12  failed to present any expert testimony during trial, and called Petitioner as a witness.  (Dkt.

13  82 at 72.)  Respondents concede this claim is exhausted except the portion concerning failure

14  to call an expert at trial.  (Dkt. 84 at 19-20.)

15      In his amended PCR petition, Petitioner argued that counsel was ineffective for not

16  exploring, prior to trial, the use of expert testimony concerning Petitioner's

17  methamphetamine use before the victim's murder and for not presenting such testimony at

18  sentencing.  (PCR-ROA doc. 23 at 16-19.)  In his petition for review to the Arizona Supreme

19  Court from the denial of PCR relief, Petitioner re-asserted only one aspect of this claim – that

20  expert testimony had not been utilized to establish mitigation during the sentencing phase.

21  He did not argue IAC based on the failure to present such evidence at trial.  (PR doc. 1 at 5-

22  8.)  Thus, Petitioner did not fully exhaust this aspect of Claim 4-A.  See O'Sullivan, 526 U.S.

23  at 848; Swoopes v. Sublett, 196 F.3d 1008 (9th Cir. 1999) (per curiam) (holding that capital

24  prisoners must seek review in Arizona Supreme Court to exhaust claims).  Petitioner's

25  assertion that the claim was exhausted because the PCR record, including the petition, was

26  transmitted to the Arizona Supreme Court is foreclosed by the Court's decision in Baldwin

27  v. Reese, 541 U.S. at 32, which held that a claim is not fairly presented if an appellate court

28                                    - 14 -

"must read beyond a petition or a brief" to discern the presence of a federal claim.

The Court concludes that Petitioner failed to fairly present the "expert testimony" portion of Claim 4-A. Because Petitioner has no available state court remedies to exhaust this claim, see Ariz. R. Crim. P. 32.2 and 32.4(a), this aspect of Claim 4-A is technically exhausted but procedurally defaulted. See Coleman, 501 U.S. at 732, 735 n.1. As cause for the default, Petitioner asserts that Arizona's post-conviction process is inadequate to protect his constitutional right to counsel and that his PCR counsel performed deficiently. (Dkt. 53 at 42.)

A claim of counsel ineffectiveness can establish sufficient cause only when it rises to the level of an independent constitutional violation. Coleman, 501 U.S. at 755. As previously noted, before ineffectiveness may be used to establish cause for a procedural default, it must have been presented to the state court as an independent claim. See Edwards, 529 U.S. at 451-53; Murray, 477 U.S. at 489-90; Tacho, 862 F.2d at 1381. However, when a petitioner has no constitutional right to counsel, there can be no constitutional violation arising out counsel's ineffectiveness. Coleman, 501 U.S. at 752. There is no constitutional right to the effective assistance of counsel in state post-conviction proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Murray v. Giarratano, 492 U.S. 1, 7-12 (1989) (the Constitution does not require states to provide counsel in PCR proceedings even when the putative petitioners are facing the death penalty); Bargas v. Burns, 179 F.3d 1207, 1215 (9th Cir. 1999) (holding that IAC in PCR proceeding cannot constitute cause); Bonin v. Vasquez, 999 F.2d 425, 429-30 (9th Cir. 1993) (refusing to extend the right of effective assistance of counsel to state collateral proceedings); Harris v. Vasquez, 949 F.2d 1497, 1513-14 (9th Cir. 1990).

The fact that the PCR proceeding was Petitioner's first and only opportunity to assert claims of ineffectiveness at trial and on appeal does not change the analysis. In Evitts v. Lucey, 469 U.S. 387, 396 (1985), the Court held that a petitioner is entitled to effective assistance of counsel on a first appeal as of right. However, since Evitts was decided, the

courts have clarified that its holding applies strictly to a first appeal as of right, even if particular types of claims could not have been raised in that appeal, because there is no constitutional right to counsel in state PCR proceedings. See Finley, 481 U.S. at 558; Moran v. McDaniel, 80 F.3d 1261, 1271 (9th Cir. 1996); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996) (IAC claim defaulted for not being raised in first habeas petition, even though the same counsel represented petitioner in both proceedings, because no right to counsel in habeas proceedings); Jeffers v. Lewis, 68 F.3d 299, 300 (9th Cir. 1995) (en banc) (plurality) (ruling an Arizona petitioner had "no Sixth Amendment right to counsel during his state habeas proceedings even if that was the first forum in which he could challenge constitutional effectiveness on the part of trial counsel"); see also Evitts, 469 U.S. at 396 n.7 (noting that discretionary appeals are treated differently because there is no right to counsel). Petitioner's argument fails because there is no constitutional right to counsel for PCR proceedings even if it is an Arizona petitioner's first opportunity to raise an ineffectiveness claim.

The Court is also unpersuaded by Petitioner's contention that Arizona court rules render the PCR proceeding part of a mandatory bifurcated appellate process for capital cases with a statutory right to counsel and, therefore, due process requires such counsel to be effective. Petitioner cites no case, and the Court has found none, which holds that a state is required by the federal constitution to provide counsel in PCR proceedings. The fact that a state may, "as a matter of legislative choice," Ross v. Moffitt, 417 U.S. 600, 618 (1974), provide for counsel in discretionary appeals following a first appeal of right does not extend the Sixth Amendment's guarantee of effective counsel to discretionary appeals. See Evitts, 469 U.S. at 394, 397 n.7; Finley, 481 U.S. at 559 (where a state provides a lawyer in a state post-conviction proceeding, it is not "the Federal Constitution [that] dictates the exact form such assistance must assume," rather, it is in a state's discretion to determine what protections to provide). Further, the Ninth Circuit has held explicitly that "ineffective assistance of counsel in habeas corpus proceedings does not present an independent violation

1   of the Sixth Amendment enforceable against the states through the Due Process Clause of

2   the Fourteenth Amendment." <u>Bonin</u>, 77 F.3d at 1160.  Because Petitioner's PCR proceeding

3   took place after his appeal of right, it was a discretionary proceeding that did not confer a

4   constitutional right to the effective assistance of counsel.  Thus, even assuming PCR

5   counsel's performance did not conform to minimum standards, it did not violate the federal

6   constitution and cannot excuse the procedural default of any claims.

7            Petitioner has not shown cause for the procedural default of the "expert testimony"

8   aspect of Claim 4-A.  Therefore, the Court declines to address prejudice.  <u>Thomas</u>, 945 F.2d

9   at 1123 n.10.  For the reasons already discussed, the Court rejects Petitioner's assertion that

10  a fundamental miscarriage of justice will occur if the claim is not heard on the merits.

11  Accordingly, the "expert testimony" portion of Claim 4-A is procedurally barred and will be

12  dismissed with prejudice.  The remainder of Claim 4-A will be addressed on the merits.

13  **<u>Claim 4-B</u>**

14           Petitioner asserts IAC based on trial counsel's failure to file a motion to vacate the

15  judgment after two witnesses came forward to support Petitioner's defense.  (Dkt. 82 at 76.)

16  Respondents do not expressly address the procedural status of this claim.  (<u>See</u> dkt. 84 at 26-

17  27.)  It appears from the Court's review of the record that Petitioner raised the claim in his

18  PCR petition but did not include it in the subsequent petition for review.

19           Although the exhaustion requirement must be expressly waived by the State, 28

20  U.S.C. § 2254(b)(3), the same is not true of the procedural default defense.  <u>Franklin v.</u>

21  <u>Johnson</u>, 290 F.3d 1223, 1230 (9th Cir. 2002) (rejecting argument that § 2254(b)(3)

22  precludes the application of ordinary implicit waiver rules to the habeas procedural default

23  doctrine); <u>Francis v. Rison</u>, 894 F.2d 353, 355 (9th Cir. 1990) (finding that government

24  waived procedural default argument by contending only that the petitioner had failed to

25  exhaust remedies, which is "quite a different argument, of course, from asserting procedural

26  default").  Because Respondents fail to address the procedural status of Claim 4-B, the Court

27  finds they have waived any procedural default defense; therefore, the claim will be addressed

28                                                    - 17 -

1   on the merits.

2      **Claim 4-C**

3      Petitioner asserts that he received IAC at sentencing because counsel failed to

4   investigate and present mitigation evidence. (Dkt. 82 at 78.)  Specifically, he asserts that

5   counsel failed to: (1) conduct a background investigation to determine the availability of

6   mitigation; (2) investigate the victim's homosexuality to bolster Petitioner's defense and

7   counter the alleged aggravating factors; and (3) present expert testimony from a toxicologist

8   concerning Petitioner's impaired mental capacity due to a methamphetamine binge at the

9   time of the crime. (Id. at 87- 89.)  Respondents contend this claim is defaulted because it was

10  never presented in state court.  (Dkt. 84 at 27-28.)

11     As already discussed with respect to Claim 4-A, Petitioner properly exhausted to the

12  Arizona Supreme Court a claim based on counsel's failure to present expert testimony at

13  sentencing concerning Petitioner's drug use.  Accordingly, sub-part (3) of Claim 4-C will be

14  addressed on the merits.  However, the remaining aspects of Claim 4-C have never been

15  presented in state court.

16     Petitioner urges the Court to find the entire claim properly exhausted on the ground

17  that the new allegations do not "fundamentally alter" the claim presented in state court. (Dkt.

18  53 at 49.)  He asserts that these additional allegations are simply "additional supporting

19  facts." (Id.)  The Court disagrees.  This is not a case in which Petitioner argued to the state

20  court that counsel had failed to conduct a reasonable mitigation investigation.  See, e.g.,

21  Landrigan v. Stewart, 441 F.3d 638, 648 (9th Cir. 2006) (en banc) (holding that additional

22  mitigation information presented in federal court provides evidentiary support, but does not

23  fundamentally alter, claim presented in state court that asserted IAC for failure "to undertake

24  a reasonable investigation of mitigating factors").  Here, the only IAC allegation relating to

25  sentencing that was presented in state court was based on counsel's decision to not present

26  *available* evidence from a defense toxicologist, who opined that Petitioner acted in a

27  methamphetamine-induced psychosis at the time of the crime.  At no time did Petitioner

28                                  - 18 -

1    assert IAC based on a failure to investigate.  Allegations of IAC constitute separate claims,

2    each of which must be exhausted in state court.  See Strickland v. Washington, 466 U.S. 668,

3    690 (1984) (stating that a petitioner making an IAC claim must identify the particular acts

4    or omissions of counsel that are alleged to have been the result of unreasonable professional

5    judgment).  The Ninth Circuit has confirmed that a generic IAC claim is insufficient to

6    exhaust particular IAC allegations.  See Carriger v. Lewis, 971 F.2d 329, 333-34 (9th Cir.

7    1992) (en banc); see also Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005).

8        The Court finds that sub-parts (1) and (2) of Claim 4-C were not fairly presented in

9    state court and that Petitioner has no available state court remedies to exhaust these

10   allegations now.  See Ariz. R. Crim. P. 32.2 and 32.4(a); Stewart v. Smith, 202 Ariz. 446,

11   449, 46 P.3d 1067, 1070 (2002) (noting that an IAC claim raised in a successive petition will

12   be precluded automatically if an IAC claim was presented in an earlier PCR petition).

13   Therefore, these portions of Claim 4-C are technically exhausted but procedurally defaulted.

14   See Coleman, 501 U.S. at 732, 735 n.1.  For the reasons already discussed, the Court rejects

15   Petitioner's assertion that inadequacy of Arizona's PCR process provides cause for the

16   default and that a fundamental miscarriage of justice will occur if the allegations are not

17   heard on the merits.  Accordingly, sub-parts (1) and (2) of Claim 4-C are procedurally barred

18   and will be dismissed with prejudice.  Sub-part (3) will be decided on the merits.

19       **Claim 4-D**

20       Petitioner asserts that appellate counsel provided constitutionally deficient

21   representation when she failed to raise a claim on direct appeal that his death sentence

22   constituted cruel and unusual punishment.  (Dkt. 82 at 97.)  Respondents concede this claim

23   was properly exhausted in state court.  (Dkt. 84 at 29.)  Therefore, it will be decided on the

24   merits by this Court.

25       **Claim 5**

26       Petitioner alleges that his rights under the Fifth, Sixth, Eighth and Fourteenth

27   Amendments were violated because trial counsel had a conflict of interest arising from his

28                                        - 19 -

1    advice to Petitioner to testify falsely.  (Dkt. 82 at 98-100.)  Respondents assert that, while

2    Petitioner presented an IAC claim based on counsel's strategy in presenting Petitioner's

3    testimony, he did not separately argue that counsel operated under a conflict of interest.

4    (Dkt. 84 at 31.)  The Court agrees.  This claim was never presented in state court, and

5    Petitioner has no available remedies to exhaust it now.  See Ariz. R. Crim. P. 32.2 and

6    32.4(a).  Accordingly, Claim 5 is technically exhausted but procedurally defaulted.  See

7    Coleman, 501 U.S. at 732, 735 n.1.

8         As cause for the default, Petitioner argues counsel's ineffectiveness "which caused

9    the conflict of interest and left Greene without a defense." (Dkt. 53 at 53.)  While Petitioner

10   did properly exhaust an IAC claim based on counsel's advice to Petitioner to testify, he fails

11   to explain how counsel's actions in this regard provide cause for the failure to properly

12   exhaust Claim 5 either on direct appeal or in the PCR petition.  The Court also rejects, for

13   the reasons previously discussed, Petitioner's assertion that inadequacy of Arizona's PCR

14   process establishes cause and that a fundamental miscarriage of justice will occur if the claim

15   is not heard on the merits.  Accordingly, Claim 5 is procedurally barred and will be dismissed

16   with prejudice.

17   **Claim 6-A**

18        Petitioner argues that the Arizona Supreme Court erred by not remanding his case for

19   resentencing after it struck the "especially heinous, cruel or depraved" aggravating factor.

20   (Dkt. 82 at 101.)  Respondents assert that Petitioner failed to fairly present this claim in state

21   court.  (Dkt. 84 at 33.)  Petitioner replies that the claim was exhausted by virtue of the

22   Arizona Supreme Court's independent sentencing review.  (Dkt. 53 at 56-57.)  The Court

23   disagrees.

24        Petitioner was obligated to give the Arizona state courts at least one "*fair* opportunity

25   to act" on his claim.  O'Sullivan, 526 U.S. at 844.  Because Claim 6-A alleges error during

26   the Arizona Supreme Court's sentencing review, that review itself did not provide the court

27   notice of, or an opportunity to correct, the alleged error.  The proper method to give the

28                                             - 20 -

1   Arizona Supreme Court an opportunity to rule on a claim of error arising during an appeal

2   itself is a motion for reconsideration.  See Ariz. R. Crim. P. 31.18(b) ("Any party desiring

3   reconsideration of a decision of an appellate court may file a motion for reconsideration in

4   the appellate court within fifteen days after the filing of a decision by the appellate court.");

5   Correll v. Stewart, 137 F.3d 1404, 1418 (9th Cir. 1998) (finding procedural default of claim

6   based on error of the Arizona Supreme Court where petitioner failed to file motion for

7   reconsideration, which is "an avenue of relief that the Arizona Rules of Criminal Procedure

8   clearly outline.").  Although Petitioner filed a motion for reconsideration, he did not include

9   this claim, thereby sidestepping an available method of alerting the state court to the claim.

10  Thus, the Court finds that Petitioner failed to fairly present Claim 6-A to the Arizona

11  Supreme Court.  See Bell v. Cone, 543 U.S. 447, 451 n.3 (2005) (finding that a petitioner

12  must present every claim to the state's highest court if there is an available means).

13       Because Petitioner has no available state court remedies to exhaust this claim, see

14  Ariz. R. Crim. P. 32.2 and 32.4(a), Claim 6-A is technically exhausted but procedurally

15  defaulted.  See Coleman, 501 U.S. at 732, 735 n.1.  Petitioner does not assert cause and

16  prejudice or a fundamental miscarriage of justice to excuse the default.  Therefore, Claim 6-

17  A is procedurally barred and will be dismissed with prejudice.

18       **Claim 6-B**

19       Petitioner argues that the "pecuniary gain" aggravating factor is unconstitutional as

20  applied in this case because it fails to sufficiently narrow the class of defendants eligible for

21  the death penalty and because insufficient evidence supports the state courts' findings. (Dkt.

22  82 at 108-16.)  Respondents concede that Petitioner exhausted the "insufficient evidence"

23  aspect of this claim but assert that Petitioner failed to argue that the pecuniary gain

24  aggravating factor fails to adequately narrow death-eligible defendants. (Dkt. 84 at 35-36.)

25  Petitioner argues that the constitutional challenge aspect of the claim was exhausted by virtue

26  of the Arizona Supreme Court's independent review. (Dkt. 53 at 57.)

27       The Arizona Supreme Court has repeatedly stated that it independently reviews each

28                                        - 21 -

1  capital case to determine whether the death sentence is appropriate.  In State v. Gretzler, 135

2  Ariz. 42, 54, 659 P.2d 1, 13 (1983), the court stated that the purpose of independent review

3  is to determine the presence or absence of aggravating and mitigating circumstances and to

4  assess their weight.  See also State v. Blazak, 131 Ariz. 598, 604, 643 P.2d 694, 700 (1982).

5  To ensure compliance with Arizona's death penalty statute, the court reviews the record

6  regarding aggravation and mitigation findings, and then decides independently whether the

7  death sentence should be imposed.  State v. Brewer, 170 Ariz. 486, 493-94, 826 P.2d 783,

8  790-91 (1992).  The Arizona Supreme Court has also said that in conducting its review, it

9  determines whether the sentence of death was imposed under the influence of passion,

10 prejudice, or any other arbitrary factors.  State v. Richmond, 114 Ariz. 186, 196, 560 P.2d

11 41, 51 (1976), sentence overturned on other grounds, Richmond v. Cardwell, 450 F. Supp.

12 519 (D. Ariz. 1978).  Arguably, such a review rests on both state and federal grounds.  See

13 Brewer, 170 Ariz. at 493, 826 P.2d at 790 (finding that statutory duty to review death

14 sentences arises from need to ensure compliance with constitutional safeguards imposed by

15 the Eighth and Fourteenth amendments); State v. Watson, 129 Ariz. 60, 63, 628 P.2d 943,

16 946 (1981) (discussing Gregg v. Georgia, 428 U.S. 153 (1976), and Godfrey v. Georgia, 446

17 U.S. 420 (1980), and stating that independent review of death penalty is mandated by the

18 U.S. Supreme Court and necessary to ensure against its arbitrary and capricious application).

19      However, Petitioner references no authority suggesting that the scope of Arizona's

20 review encompasses any and all constitutional error at sentencing, and this Court has found

21 none.  Rather, it appears from Brewer that the state court's review is limited to ensuring that

22 imposition of a death sentence rests on permissible grounds.  See also Watson, 129 Ariz. at

23 63, 628 P.2d at 946.  With respect to the instant issue, the Court finds that the Arizona

24 Supreme Court's limited review did not necessarily include analysis of whether the pecuniary

25 gain aggravating factor fails to adequately channel the sentencer's discretion.   This

26 conclusion is supported by the Ninth Circuit's decision in Moormann v. Schriro, 426 F.3d

27 at 1057-58, which expressly found that the Arizona Supreme Court's sentencing review did

28

- 22 -

1    not exhaust claims challenging the constitutionality of two aggravating factors.

2        The Court concludes that Petitioner failed to fairly present the "insufficient
3    narrowing" aspect of Claim 6-B in state court.  Because Petitioner has no available state
4    court remedies to exhaust this allegation, see Ariz. R. Crim. P. 32.2 and 32.4(a), this portion
5    of Claim 6-B is technically exhausted but procedurally defaulted.  See Coleman, 501 U.S.
6    at 732, 735 n.1.  For the reasons already discussed, the Court rejects Petitioner's assertion
7    that appellate ineffectiveness constitutes cause for the default and that a fundamental
8    miscarriage of justice will occur if the claim is not heard on the merits.  Accordingly, the
9    "insufficient evidence" portion of Claim 6-B will be decided on the merits; the remainder of
10    Claim 6-B is procedurally barred and will be dismissed with prejudice.

11    **Claim 6-C**

12        Petitioner argues that at the time of his sentencing both the trial judge and the Arizona
13    Supreme Court "operated under the unconstitutional assumption that Greene had to show a
14    causal nexus between his proffered mitigating evidence and the crime." (Dkt. 82 at 117.)
15    He asserts this claim was exhausted by virtue of the Arizona Supreme Court's independent
16    sentencing review. (Dkt. 53 at 61.) Respondents contend that this claim was never presented
17    in state court and is therefore procedurally defaulted.  (Dkt. 84 at 37.)  The Court agrees.

18        As just stated, the scope of Arizona's independent sentencing review is limited.  The
19    allegation presented here is not the type of claim that would have necessarily been assessed
20    when the state court independently reweighed the aggravating and mitigating factors to
21    determine whether the death sentence was an appropriate penalty.  Thus, this review did not
22    exhaust Claim 6-C.  See Moormann, 426 F.3d at 1057-58.

23        The Court concludes that Petitioner failed to fairly present Claim 6-C in state court.
24    Because Petitioner has no available state court remedies to exhaust this allegation, see Ariz.
25    R. Crim. P. 32.2 and 32.4(a), the claim is technically exhausted but procedurally defaulted.
26    See Coleman, 501 U.S. at 732, 735 n.1.  For the reasons already discussed, the Court rejects
27    Petitioner's claim that appellate ineffectiveness constitutes cause for the default and that a

28                                    - 23 -

1  fundamental miscarriage of justice will occur if the claim is not heard on the merits.

2  Accordingly, Claim 6-C is procedurally barred and will be dismissed with prejudice.

3  **Claim 7-A**

4  Petitioner argues that the Arizona capital sentencing scheme, taken as a whole, fails

5  to genuinely narrow the class of persons eligible for the death penalty. (Dkt. 82 at 124.) He

6  contends that this claim was presented in his direct appeal and in his PCR petition, and was

7  exhausted by virtue of the Arizona Supreme Court's independent sentencing review. (Dkt.

8  53 at 64.) Regardless of exhaustion, the Court will deny this claim as plainly meritless. See

9  28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. at 277 (holding that a stay is

10  inappropriate in federal court to allow claims to be raised in state court if they are subject to

11  dismissal under § 2254 (b)(2) as "plainly meritless").

12  Claim 7-A alleges that Arizona's capital sentencing scheme fails to adequately

13  channel sentencing discretion because first degree murder is too broadly defined, aggravating

14  factors are too broad, and requiring mitigation to outweigh aggravation creates an

15  impermissible mandatory death penalty. (Dkt. 82 at 124-27.) In Smith (Bernard) v. Stewart,

16  the Ninth Circuit summarily rejected the petitioner's claims regarding constitutionality of

17  Arizona's death penalty, including allegations that Arizona's statute does not properly

18  narrow the class of death penalty recipients, that sentencing judges do not have proper

19  guidance, that imposition of the death penalty under the statute is mandatory and that the

20  death penalty "in gross" constitutes cruel and unusual punishment. 140 F.3d 1263, 1271 (9th

21  Cir. 1998). Similarly, in Ortiz v. Arizona, the court noted that "[a]lthough the Constitution

22  requires that the states devise procedures to guide a sentencer's discretion, the absence of

23  specific standards instructing the sentencer how to weigh the aggravating and mitigating

24  factors does not render a death penalty statute unconstitutional." 149 F.3d 923, 944 (9th Cir.

25  1998) (citing Zant v. Stephens, 462 U.S. 862, 880 (1983)). The Court finds that Petitioner

26  is not entitled to habeas relief on Claim 7-A.

27

28

1

**Claim 7-B**

2    In this claim, Petitioner argues generally that he should not have been sentenced to

3 death. (Dkt. 82 at 127-31.) The petition does not allege a specific constitutional violation

4 but suggests that the sentencing judge was improperly influenced to impose the death penalty

5 by the high-profile nature of the case. (Id.) Respondents assert that neither the claim nor its

6 factual basis has ever been presented in state court and is therefore procedurally barred.

7 (Dkt. 84 at 42.) Petitioner fails to address this assertion in his Traverse.

8    The Court finds that Petitioner failed to fairly present Claim 7-B in state court.

9 Because Petitioner has no available state court remedies to exhaust this claim, see Ariz. R.

10 Crim. P. 32.2 and 32.4(a), it is technically exhausted but procedurally defaulted.  See

11 Coleman, 501 U.S. at 732, 735 n.1.  Petitioner does not assert cause and prejudice or a

12 fundamental miscarriage of justice to excuse the default.  Therefore, Claim 7-B is

13 procedurally barred and will be dismissed with prejudice.

14    **Claim 7-C**

15    Petitioner alleges a violation of his Sixth, Eighth and Fourteenth Amendment rights

16 because he was not afforded a jury trial on the aggravating factors that rendered him eligible

17 for the death penalty.  Respondents concede this claim is properly exhausted. (Dkt. 84 at 42-

18 43. In Ring v. Arizona, 536 U.S. 584, 609 (2002), the Supreme Court found that Arizona's

19 aggravating factors are an element of the offense of capital murder and must be found by a

20 jury. However, in Schriro v. Summerlin, 542 U.S. 348 (2004), the Court held that Ring does

21 not apply retroactively to cases already final on direct review.  Because Petitioner's direct

22 review was final prior to Ring, he is not entitled to federal habeas relief premised on that

23 ruling.  Accordingly, Claim 7-C will be denied on the merits.

24    **Claim 8**

25    Petitioner asserts that the trial court "committed reversible error" by allowing the

26 victim's wife to testify regarding the victim's moral values. (Dkt. 82 at 136.) The admission

27 of this evidence, Petitioner contends, violated his right to a fair trial and due process. (Id. at

28                                    - 25 -

1   138.)  Respondents argue that Claim 8 was presented on direct appeal solely as a state law

2   claim and, therefore, the federal constitutional basis was never fairly presented.  (Dkt. 84 at

3   43.)  Petitioner counters that the Arizona Supreme Court actually reached the merits of the

4   claim because it cited a state case, State v. Rivera, 152 Ariz. 507, 733 P.2d 1090 (1987),

5   which in turn cited to Anders v. California, 386 U.S. 738 (1967).

6         As with Claim 2, the Court rejects Petitioner's proposition that citation to an unrelated

7   state case, which cites a federal case that does not employ the relevant federal constitutional

8   analysis, is sufficient to exhaust the instant claim.  See Casey, 386 F.3d at 912 n.13; Peterson,

9   319 F.3d at 1159.  In Rivera, the court cited Anders solely to support its statement that it had

10  searched the record for fundamental error before affirming the defendant's conviction and

11  sentence.  Neither Rivera nor Anders employed an analysis under the Fourteenth Amendment

12  concerning the admission of evidence.

13        The Court concludes that Petitioner failed to fairly present Claim 8 in state court.

14  Because Petitioner has no available state court remedies to exhaust this allegation, see Ariz.

15  R. Crim. P. 32.2 and 32.4(a), the claim is technically exhausted but procedurally defaulted.

16  See Coleman, 501 U.S. at 732, 735 n.1.  For the reasons already discussed, the Court rejects

17  Petitioner's claim that appellate ineffectiveness constitutes cause for the default and that a

18  fundamental miscarriage of justice will occur if the claim is not heard on the merits.

19  Accordingly, Claim 8 is procedurally barred and will be dismissed with prejudice.

20  **Claim 9**

21        Petitioner alleges his constitutional rights will be violated because he will not receive

22  a fair clemency proceeding.  In particular, he alleges the proceeding will not be fair and

23  impartial based on the Board's selection process, composition, training, and procedures, and

24  because the Attorney General will act as the Clemency Board's legal advisor and as an

25  advocate against Petitioner.  (Dkt. 82 at 140.)  Petitioner acknowledges that because he has

26  not sought clemency this claim is premature and not ripe for adjudication.   More

27  significantly, however, this claim is not cognizable on federal habeas review.  Habeas relief

28

can only be granted on claims that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's challenges to state clemency procedures and/or proceedings do not represent an attack on his detention (i.e., his conviction or sentence) and thus do not constitute proper grounds for relief. See Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989); see also Woratzeck v. Stewart, 118 F.3d 648, 653 (9th Cir. 1997) (per curiam) (clemency claims are not cognizable under federal habeas law). Therefore, the Court will dismiss Claim 9 as not cognizable in a federal habeas petition.

**Claim 10**

Petitioner alleges that execution by the State after an extended period of incarceration on death row fails to serve any legitimate penological purpose and violates his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. 82 at 143.) Petitioner concedes he did not present this claim to the state courts but argues it could not be raised in state court because a sufficient amount of time had not passed. (Id.) Respondents argue that this claim was never presented in state court and is now barred. (Dkt. 84 at 46.)

Regardless of whether Petitioner could overcome the procedural default of this claim, the Court will deny it as meritless. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277. The Supreme Court has not decided whether lengthy incarceration prior to execution can constitute cruel and unusual punishment. See Lackey v. Texas, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed).   In contrast, circuit courts, including the Ninth Circuit, hold prolonged incarceration under a sentence of death does not offend the Eighth Amendment.   See McKenzie v. Day, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); White v. Johnson, 79 F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); Stafford v. Ward, 59 F.3d 1025, 1028 (10th Cir. 1995) (delay of 15 years).  Because the Supreme Court has never held that prolonged incarceration violates the Eighth Amendment, Petitioner cannot establish a right to federal habeas relief under 28 U.S.C. § 2254(d).  See Allen v. Ornoski, 435 F.3d 946, 958-60 (9th Cir. 2006).  Therefore, Claim 10 will be denied on the merits.

1

**Claim 11**

2       Petitioner alleges that he will be incompetent for execution under the Fifth, Sixth,

3   Eighth and Fourteenth Amendments.   (Dkt. 82 at 156.)   Petitioner recognizes, and

4   Respondents agree, that this claim is not yet ripe for federal review.   (Dkt. 84 at 48.)

5   Pursuant to <u>Martinez-Villareal v. Stewart</u>, 118 F.3d 628, 634 (9th Cir. 1997), <u>aff'd</u>, 523 U.S.

6   637 (1998), a claim of incompetency for execution "must be raised in a first habeas petition,

7   whereupon it also must be dismissed as premature due to the automatic stay that issues when

8   a first petition is filed."  If again presented to the district court once the claim becomes ripe

9   for review, it shall not be treated as a second or successive petition.   <u>Id.</u> at 643-44.

10  Therefore, the Court will dismiss Claim 11 without prejudice as premature.

11

**Claim 12**

12      Petitioner alleges that Arizona's lethal injection procedures constitute cruel and

13  unusual punishment in violation of his rights under the Eighth Amendment. (Dkt. 82 at 158.)

14  He argues alternatively that this claim was exhausted as part of the Arizona Supreme Court's

15  independent review of the death sentence (<u>id.</u> at 157-58), and that he was not required to

16  present the claim in state court because it was futile to do so in light of the Arizona Supreme

17  Court's consistent rejection of similar claims (dkt. 53 at 79).  Petitioner also requests a stay

18  and asserts that state court relief is still available under the "newly-discovered evidence"

19  exception to preclusion under Arizona's Rule 32.1(e). (Dkt. 53 at 77.)  Respondents argue

20  that this claim was never presented in state court and is now barred.  (Dkt. 84 at 48.)

21      The Court summarily rejects Petitioner's assertion that the state supreme court's

22  independent sentencing review exhausted Claim 12.  A challenge to a method of execution

23  is not the type of claim that was necessarily considered by the Arizona Supreme Court when

24  it independently reviewed the propriety of Petitioner's sentence.  <u>See</u> <u>Brewer</u>, 170 Ariz. at

25  494, 826 P.2d at 791.  Similarly, the Court rejects Petitioner's claim that he was excused

26  from raising Claim 12 in state court because it was futile to do so.  <u>See</u> <u>Roberts v. Arave</u>, 847

27  F.2d 528, 530 (9th Cir. 1988) ("[T]he apparent futility of presenting claims to state courts

28

1   does not constitute cause for procedural default."). Finally, the Court concludes that

2   Petitioner has no available state remedies for this claim.

3          Under Arizona's Rule 32.1(e), before a claim of newly-discovered evidence will be

4   considered in a successive PCR petition, it must be shown that the evidence supplies newly-

5   discovered material facts that existed but were not uncovered at the time of trial *and* that the

6   petitioner exercised due diligence to secure it. Ariz. R. Crim. P. 32.1(e); 32.2(b). Petitioner

7   asserts that his newly-discovered facts concern the interplay between the three drugs used

8   in lethal injection executions and that these facts were not "available" at the time of his direct

9   appeal in 1997. (Dkt. 53 at 77-78.) However, Petitioner does not explain why he did not

10  investigate these facts either before sentencing or during his PCR proceedings. In his

11  petition, Petitioner relies on authority dating as far back as 1982 and acknowledges that

12  evidence has existed for "at least fifty years" that the drugs used in lethal injections pose a

13  risk of unnecessary pain to persons being executed. (Dkt. 82 at 158.) The Court concludes

14  that Petitioner cannot show diligence for not investigating the facts underlying this claim and

15  presenting it in state court either before sentencing, on appeal, or in his first PCR proceeding.

16  See Williams v. Stewart, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam) (finding no

17  due diligence where Arizona prisoner failed to seek evidence after introduction of lethal

18  injection as mode of execution in 1992 but before filing of PCR petition in 1994). Because

19  the Court finds there are no remedies presently available to Petitioner in state court, Claim

20  12 is technically exhausted but procedurally defaulted. Coleman, 501 U.S. at 732, 735 n.1.

21         Petitioner asserts IAC of appellate counsel as cause for the default, but did not

22  independently raise such a claim in state court. See Edwards, 529 U.S. at 451-53. Petitioner

23  does not assert that a fundamental miscarriage of justice will occur if the claim is not heard

24  on the merits. Claim 12 is procedurally barred and will be dismissed with prejudice.

25         **Summary of Procedural Status Findings**

26         Claims 4-A (in part), 4-B, 4-C (in part), 4-D, and 6-B (in part) are properly before this

27  Court for review. Claim 11 will be dismissed without prejudice as premature. Claims 7-A,

28

7-C, and 10 will be dismissed on the merits; Claims 1, 2, 3, 4-A (in part), 4-C (in part), 5, 6-A, 6-B (in part), 6-C, 7-B, 8, and 12 will be dismissed as procedurally barred; and Claim 9 will be dismissed as not cognizable.  Accordingly, Petitioner's motions for evidentiary development as to these claims are denied.

## LEGAL STANDARD FOR EVIDENTIARY HEARING, EXPANSION OF THE RECORD AND DISCOVERY

### Evidentiary Hearing

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372 U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).  However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529 U.S. 420 (2000).

Section 2254 provides that:

*If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack

of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams, 529 U.S. at 432. "The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." Id. at 435. The Court found that this rule served the AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). In correlation, subsection (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis. See Baja, 187 F.3d at 1078 (quoting Cardwell, 152 F.3d at 337. The Supreme Court set an objective standard for determining "diligence" – whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. See id. at 438-40 (counsel lacked diligence because he was on notice of possibly material evidence and conducted only a cursory investigation); Alley v. Bell, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all

1    the factual grounds for such claims).

2        Absent unusual circumstances, diligence requires "that the prisoner, at a minimum,

3    seek an evidentiary hearing in state court in the manner prescribed by state law." Williams,

4    529 U.S. at 437; see Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), amended on

5    denial of reh'g, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on

6    ineffective counsel claim because petitioner did not request an evidentiary hearing, and

7    brought claim only on appeal not in a collateral proceeding). Moreover, the mere request for

8    an evidentiary hearing may not be sufficient to establish diligence if a reasonable person

9    would have taken additional steps.  See Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir.

10   2000) (petitioner requested hearing but found not diligent because he failed to present

11   affidavits of family members that were easily obtained without court order and with minimal

12   expense); see also Koste v. Dormire, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence

13   despite hearing request because petitioner made no effort to develop the record or assert any

14   facts to support claim that his counsel was ineffective for knowing of and failing to

15   investigate petitioner's psychiatric condition), cert. denied, 124 S. Ct. 2070 (2004).  If an

16   evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct

17   such a hearing does not in itself demonstrate lack of diligence.  See Cardwell, 152 F.3d at

18   338.

19       In sum, if this Court determines that a petitioner has not been diligent in establishing

20   the factual basis for his claims in state court, then the Court may not conduct a hearing unless

21   the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.

22       **Expansion of the Record**

23       Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court

24   to expand the record to include additional material relevant to the determination of the merits

25   of a petitioner's claims.  Rule 7 provides:

26       The materials that may be required include letters predating the filing of the
         petition, documents, exhibits, and answers under oath, to written
27       interrogatories propounded by the judge.  Affidavits may also be submitted

28                                    - 32 -

1   and considered as part of the record.

2   Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is

3   to enable the judge to dispose of some habeas petitions not dismissed on the pleadings,

4   without the time and expense required for an evidentiary hearing."  Advisory Committee

5   Notes, Rule 7, 28 U.S.C. foll. § 2254; see also Blackledge v. Allison, 431 U.S. 63, 81-82

6   (1977).

7           Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present

8   new evidence through a Rule 7 motion to expand the record in the same manner as it does

9   with regard to evidentiary hearings.  See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241

10  (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners

11  seeking relief based on new evidence, even when they do not seek an evidentiary hearing)

12  (citing Holland v. Jackson, 542 U.S. 649, 652-53 (2004) (per curiam)).  Thus, when a

13  petitioner seeks to introduce, through a Rule 7 motion, new affidavits and other documents

14  never presented in state court for the purpose of establishing the factual predicate of a claim,

15  he must show both diligence in developing the factual basis in state court and relevancy of

16  the evidence to his claim.  If diligence is not shown, the requirements of § 2254(e)(2) must

17  be satisfied before the Court can consider expansion of the record.  To find otherwise would

18  allow circumvention of the AEDPA's restriction against federal habeas courts holding

19  evidentiary hearings in cases where the petitioner is at fault for failing to develop the facts

20  in state court.

21          When a petitioner seeks to expand the record for reasons other than to introduce

22  evidence to bolster the merits of his claim, the strictures of § 2254(e)(2) may not apply.  See

23  Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) (finding it nonsensical to apply §

24  2254(e)(2) when expansion of the record is used for reasons other than to introduce new

25  factual information on the merits of a claim).  For example, expansion of the record may be

26  appropriate to cure omissions in the state court record, see Dobbs v. Zant, 506 U.S. 357, 359

27  (1993) (per curiam) (reversing for failure to supplement the record with a late-discovered

28

- 33 -

1   transcript); <u>see also</u> Rule 5, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (directing

2   answering party to submit portions of record it deems relevant), or to establish diligence

3   pursuant to § 2254(e)(2).  <u>See Boyko</u>, 259 F.3d at 792.

4          In evaluating the instant motion, the Court must first determine whether Petitioner is

5   seeking expansion of the record to achieve the same end as an evidentiary hearing.  If so,  the

6   Court must then assess whether Petitioner demonstrated diligence in developing the factual

7   basis of the claim in state court and, if not, whether he meets the requirements of

8   § 2254(e)(2).  In addition, the Court must determine whether the proffered evidence is

9   relevant to a determination of the claim's merits, <u>see</u> Rule 7(a), 28 U.S.C. foll. § 2254, and

10  whether the new evidence fundamentally alters the claim such that it is rendered

11  unexhausted.  <u>See Vasquez</u>, 474 U.S. at 258-59.  If Petitioner is seeking expansion for some

12  other purpose, such as curing omissions from the state court record, establishing cause and

13  prejudice or a fundamental miscarriage of justice for a procedural default, or demonstrating

14  diligence for purposes of showing the inapplicability of  § 2254(e)(2), the Court need only

15  evaluate relevance.

16         **<u>Discovery</u>**

17         Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that

18  "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal

19  Rules of Civil Procedure, and may limit the extent of discovery."  Rule 6(a), 28 U.S.C. foll.

20  § 2254 (emphasis added).  Thus, unlike the usual civil litigant in federal court, a habeas

21  petitioner is not entitled to discovery "as a matter of ordinary course,"  <u>Bracy v. Gramley</u>,

22  520 U.S. 899, 904 (1997); <u>see also</u> <u>Rich v. Calderon</u>, 187 F.3d 1064, 1068 (9th Cir. 1999),

23  and a habeas court should not allow a habeas petitioner "to use federal discovery for fishing

24  expeditions to investigate mere speculation."  <u>Calderon v. United States Dist. Court for the</u>

25  <u>Northern Dist. of Cal. (Nicolaus)</u>, 98 F.3d 1102, 1106 (9th Cir. 1996); <u>see also</u> <u>Aubut v. State</u>

26  <u>of Maine</u>, 431 F.2d 688, 689 (1st Cir. 1970) ("[h]abeas corpus is not a general form of relief

27  for those who seek to explore their case in search of its existence").  Pursuant to <u>Bracy</u>,

28                                        - 34 -

1   deciding whether a petitioner has established "good cause" for discovery requires a habeas

2   court to determine the essential elements of the petitioner's substantive claim and evaluate

3   whether "specific allegations before the court show reason to believe that the petitioner may,

4   if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Id.

5   at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

6                                    **MOTIONS DISCUSSION**

7          The Court now assesses whether expansion of the record, discovery and/or an

8   evidentiary hearing should be granted with respect to the remaining properly exhausted

9   claims for which evidentiary development is sought.

10         **Claim 4**

11         Petitioner requests an evidentiary hearing on the entirety of Claim 4.  His requests for

12  discovery and expansion of the record do not specifically identify the sub-parts of Claim 4

13  for which evidentiary development is sought, stating instead that all parts of the claim

14  "should be analyzed together." (Dkt. 67 at 32.)  Therefore, the Court must discern from the

15  requests themselves whether the development Petitioner seeks relates to a claim that is

16  properly before the Court.

17         Petitioner requests discovery from the State of Washington Department of Social and

18  Health Services. (Dkt. 67 at 32.)  Specifically, he seeks records with regard to Petitioner and

19  twenty-three other individuals (primarily relatives of Petitioner), presumably to support his

20  IAC claim concerning counsel's failure to conduct a mitigation investigation. Petitioner also

21  seeks to expand the record with medical records reflecting his health history; law

22  enforcement records of several family members; childhood and family photographs;

23  declarations from mental health experts retained during these habeas proceedings; and

24  numerous declarations from individuals who have personal knowledge of Petitioner's

25  background and upbringing, again presumably to support his "failure to conduct a mitigation

26  investigation" IAC claim.  Because this aspect of Claim 4 is procedurally barred, these

27  requests for discovery and expansion of the record will be denied.

28

1    Petitioner also seeks to expand the record with declarations from individuals who

2    believe the victim was gay.  This evidence, Petitioner argues, supports his defense that his

3    actions the night of the crime were in response to a homosexual advance by the victim.  (Dkt.

4    67 at 33.)  He further states that these declarations constitute impeachment evidence of the

5    victim's wife, who testified at trial, and support his claim that counsel was ineffective for not

6    filing a motion to vacate the conviction when two other witnesses with similar views of the

7    victim emerged after trial but before sentencing.  (Id. at 33-34.)  Of these stated reasons for

8    expansion, only the latter relates to a claim that is properly exhausted (Claim 4-B).

9    Finally, Petitioner seeks to expand the record with declarations from trial counsel to

10   support Petitioner's contention that the victim's wife's extra-marital affair constitutes

11   "critical rebuttal and impeachment evidence" and that counsel failed to adequately

12   investigate and present available mitigation evidence and to call expert witnesses at trial and

13   sentencing.  (Dkt. 67 at 34.)  Of these stated bases, only the allegation concerning counsel's

14   failure to present an available expert at sentencing, Claim 4-C(3), is properly before the

15   Court.

16   *Analysis*

17   Respondents argue that Petitioner had an opportunity to develop Claim 4 during the

18   PCR evidentiary hearing held in state court and, therefore, further evidentiary development

19   is unwarranted.  (Dkt. 76 at 17-20.)  Petitioner contends, without citation to the state court

20   record, that he was diligent in developing the facts in state court but was hindered by the

21   PCR court's denial of resources necessary to obtain and present the evidence he now seeks

22   to develop.  (Dkt. 67 at 33; dkt. 78 at 13, 17.)  The Court disagrees.

23   Following his appointment in February 2000, PCR counsel sought an extension to file

24   the petition on the grounds that he needed to "obtain additional affidavits, to research issues

25   and to obtain records needed for the presentation of the Defendant's claims."  (PCR-ROA

26   doc. 2.)  Counsel also sought the appointment of a neuropsychologist and permission to

27   conduct a deposition of an individual with knowledge of the victim's wife's extra-marital

28

1    affair; both requests were granted. (PCR-ROA docs. 4, 6, 9, 11.)  The amended PCR petition

2    included an affidavit avowing to a conversation between PCR and trial counsel concerning

3    Petitioner's testimony at trial.  In June 2002, the PCR court issued a minute entry setting an

4    evidentiary hearing on Petitioner's IAC claim relating to the decision to testify.  (PCR-ROA

5    doc. 30.)  The hearing was held in September 2002, and Petitioner, a <u>Strickland</u> expert, and

6    trial counsel David Darby, Jill Thorpe, and Julie Duval testified.  (R.T. 9/2/02.)

7         In this Court, Petitioner seeks an evidentiary hearing on Claim 4-A regarding

8    counsel's advice to testify.  However, the instant motion fails to identify the facts Petitioner

9    contends need further development.  (<u>See</u> dkt. 7 at 4; directing that evidentiary development

10   motions describe with specificity the facts sought to be developed.)  The motion simply lists

11   potential witnesses and summarizes the general area of proposed testimony without

12   explanation of the facts each would establish (i.e., trial counsel "will testify regarding his

13   investigation of Greene's case").  (Dkt. 67 at 41.)  Trial counsel testified at the PCR

14   evidentiary hearing, and Petitioner had an opportunity to make relevant inquiries at that time.

15   Petitioner's contention notwithstanding, nothing in the state court record indicates a denial

16   of resources by the PCR court.  PCR counsel requested and received funds for a

17   neuropsychological examination; he requested no other resources.  To the extent Petitioner

18   now wants to develop additional facts, he has not demonstrated that he diligently attempted

19   to develop such facts in state court.  Petitioner's lack of diligence in state court prohibits this

20   Court from holding a hearing with respect to this claim, and Petitioner has not attempted to

21   satisfy the requirements of §§ 2254(e)(2)(A) & (B).

22        In Claim 4-B, Petitioner alleges that counsel was ineffective for not filing a motion

23   to vacate judgment after two witnesses emerged that believed the victim was gay.  (Dkt. 82

24   at 78.)   Petitioner seeks an evidentiary hearing and to expand the record with new

25   declarations from five additional witnesses who assert that the victim engaged in homosexual

26   relations.  These requests will be denied.  First, the new declarations are irrelevant to the

27   question before this Court: Whether counsel acted ineffectively in failing to seek to vacate

28

judgment after learning of the two witnesses who knew of the victim's sexual proclivities.
Second, it is not clear what relevant factual development Petitioner seeks.  If he intends to
question counsel about the decision not to file a motion to vacate judgment, the Court finds
that he did not act diligently in state court.  Petitioner, through PCR counsel, had the means
and opportunity to interview trial counsel and examine him during the evidentiary hearing.
Finally, the Court concludes that Claim 4-B  is capable of resolution from the existing court
record.

Regarding Claim 4-C, the non-defaulted portion of which alleges that counsel was
ineffective at sentencing for not presenting expert testimony concerning Petitioner's drug
use, Petitioner seeks an evidentiary hearing and to expand the record with declarations from
his trial lawyers.  During the state court evidentiary hearing, PCR counsel argued that Claims
4-A and 4-C were interrelated.  (R.T. 9/9/02 at 9.)  He asserted that once trial counsel
decided to have Petitioner testify the way he did at trial, that choice affected his decision to
not utilize the toxicologist at sentencing.  (Id.)  In addition, throughout the hearing, PCR
counsel questioned Petitioner's trial lawyers concerning the decision to not utilize the
toxicologist to establish mitigation.  (Id. at 18-30, 50-54, 78-81.)  As with Claim 4-A, the
instant motion fails to identify the facts Petitioner contends need further development in these
proceedings.  Petitioner had an opportunity to examine defense counsel during the PCR
hearing and to proffer evidence to support his claim.  To the extent Petitioner now wants to
develop additional facts, he has not demonstrated that he diligently attempted to develop such
facts in state court.  Petitioner's lack of diligence in state court prohibits this Court from
holding a hearing or expanding the record with respect to this claim, Cooper-Smith, 397 F.3d
at 1241, and Petitioner has not attempted to satisfy the requirements of §§ 2254(e)(2)(A) &
(B).

Finally, Petitioner seeks an evidentiary hearing on Claim 4-D, which alleges
ineffective assistance of appellate counsel.  Petitioner proposes to elicit testimony from
appellate counsel regarding her investigation, selection and rejection of various claims, and

preparation of the appellate briefs.  (Dkt. 82 at 42.)  In his PCR petition, Petitioner alleged that counsel performed deficiently by failing to argue on direct appeal that imposition of the death penalty in Petitioner's case constitutes cruel and unusual punishment.  (PCR-ROA doc. 23 at 42.)  In support of the claim, Petitioner appended a copy of the petition for writ of certiorari filed in the U.S. Supreme Court by appellate counsel, which included a previously unraised Eighth Amendment claim.  (PCR-ROA doc. 23, App.)  However, the PCR petition did not contain a declaration from appellate counsel explaining why she did not include the claim in the direct appeal or a declaration from PCR counsel detailing an interview with appellate counsel or stating she refused to be interviewed, even though PCR counsel did append such a declaration regarding his interview with trial counsel.

There is nothing in the record to indicate that appellate counsel refused to be interviewed or cooperate with PCR counsel's investigation of Petitioner's IAC claims, and the Court finds that Petitioner could have "easily obtained [her] affidavit[]." Dowthitt, 230 F.3d at 758.  In addition, under Arizona law, appellate counsel is "not ineffective for selecting some issues and rejecting others."  State v. Herrera, 183 Ariz. 642, 647, 905 P.2d 1377, 1382 (Ariz. App. 1995).  Thus, to succeed on an appellate IAC claim, it was incumbent upon PCR counsel to assert something more than the fact that counsel failed to raise an issue on appeal; he had to show that appellate counsel's failure to assert the issue was constitutionally deficient.  Id. (holding appellate IAC claim not colorable in the absence of evidence that failure to raise additional claims fell below professional norms).  At a minimum, PCR counsel should have investigated why appellate counsel did not raise any Eighth Amendment challenges on appeal and set forth these allegations in his PCR petition. Petitioner's lack of diligence in state court prohibits this Court from holding a hearing, and Petitioner has not attempted to satisfy the requirements of §§ 2254(e)(2)(A) & (B).

**Claim 6-B**

In support of his claim that the state court erred in finding the murder was committed for pecuniary gain pursuant to A.R.S. § 13-703(F)(5), Petitioner seeks discovery from the

1    Pima County Attorney's Office of all files relating to his case. (Dkt. 67 at 44.) He also seeks

2    to expand the record with declarations from trial counsel; declarations from individuals who

3    have personal knowledge of Petitioner's background and upbringing; declarations from

4    mental health experts retained during these habeas proceedings; medical records reflecting

5    his health history; law enforcement records of several family members; childhood and family

6    photographs; and a DVD recording of a Continuing Legal Education seminar featuring

7    remarks by former Arizona Supreme Justice Stanley Feldman regarding the court's

8    independent sentencing review. (<u>Id.</u> at 45-50.) Petitioner does not request an evidentiary

9    hearing on this claim.

10          Federal habeas review of Claim 6-B is limited to determining whether the state court's

11   finding of the pecuniary gain factor was so arbitrary or capricious as to constitute an

12   independent due process or Eighth Amendment violation. <u>Lewis v. Jeffers</u>, 497 U.S. 764,

13   780 (1990). This is necessarily a record-based claim, for which the admission of additional

14   evidence is unwarranted. In addition, the evidence Petitioner seeks to develop is plainly

15   irrelevant. Consequently, Petitioner's requests for discovery and expansion of the record to

16   support Claim 6-B will be denied.

17          Based on the foregoing,

18          **IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:

19   (a) Claims 1, 2, 3, 4-A (in part), 4-C (in part), 5, 6-A, 6-B (in part), 6-C, 7-B, 8, and 12 based

20   on a procedural bar; (b) Claim 9 as not cognizable; and (c) Claims 7-A, 7-C, and 10 on the

21   merits as a matter of law.

22          **IT IS FURTHER ORDERED** that Claim 11 is dismissed without prejudice as

23   premature.

24          **IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery, to Expand the

25   Record and for Evidentiary Hearing (Dkt. 67) is **DENIED**.

26          **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or

27   Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

28                                          - 40 -

1   within fifteen (15) days of the filing of this Order.

2        **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of

3   this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ

4   85007-3329.

5        DATED this 29th day of September, 2006.

6

7

8

9

10   FRANK R. ZAPATA

11   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28